GOLDEN BEAR FAMILY RESTAURANTS, INC., Plaintiff-Appellant, v. JAMES J. MURRAY *et al.*, Defendants-Appellees.—MONTGOMERY WARD AND COMPANY, INC., Plaintiff-Appellant, v. MARY KILROY *et al.*, Defendants-Appellees.

First District (4th Division)   No. 85—1088

Opinion filed May 15, 1986.—Modified opinion filed on denial of rehearing July 3, 1986.

Alexandra M. Goddard, of Chicago, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Richard J. Puchalski, Special Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiffs appeal from a judgment entered in two causes consolidated in the circuit court of Cook County. Plaintiff Golden Bear Family Restaurants, Inc. (hereinafter Golden Bear), appeals from the judgment, which granted summary judgment for defendants James J. Murray, the Illinois Department of Labor, wage-claims division (hereinafter the Department), and Donald J. McNeil, superintendent of the Department's wage claims division. Plaintiff Montgomery Ward and Company, Inc. (hereinafter Ward), appeals from the same judgment, which also granted summary judgment for defendants Mary Kilroy, the Department, and McNeil. The judgment upheld a ruling of the Department. The Department ruled that, under Illinois law, employees earned vacation pay *pro rata* and, upon discharge, were entitled to the vacation wages that they accrued until their employment ended.

We affirm.

Golden Bear discharged Murray, an employee, on October 16, 1982. The company maintained a vacation plan that provided, in pertinent part, as follows:

"9207. Vacation pay when termination occurs within the calendar year of accrual.

Vacation days for all eligible employees will not be paid for accrued vacation days when termination (voluntary or involuntary) occurs within the same calendar year."

Since Golden Bear discharged Murray in 1982, he did not receive any vacation pay for the approximately 10½ months in 1982 during which the company employed him.

Ward discharged Kilroy, an employee, on December 22, 1982. The company also maintained a vacation plan that provided, in pertinent part, as follows:

"9201. Determining Earned Vacation

Earned vacation is the amount of vacation to which an eligible employee becomes entitled to take in a calendar year if the employee is actively on the payroll working a regular schedule (not on disability or leave of absence) on the Wednesday proceeding January 1."

Since Ward discharged Kilroy before the Wednesday following January 1, she did not receive vacation pay for the approximately 11¾ months in 1982 during which Ward employed her.

After their discharges, Murray and Kilroy filed wage claims with the Department. They alleged that plaintiffs violated the Illinois Wage Payment and Collection Act, which authorizes the Department to enforce its provisions. (Ill. Rev. Stat. 1983, ch. 48, par. 39m—11.) Murray and Kilroy sought from their respective former employers the vacation pay that they earned in 1982. After separate proceedings, the Department determined that Murray was entitled to $217.96 as accrued vacation wages, i.e., the pro rata portion of his 1982 vacation pay that he earned from January 1, 1982, to his last day of employment. Also, the Department determined that Kilroy was entitled to $1,225.02 as accrued vacation wages.

Before the Department began any enforcement action, Golden Bear and Ward brought separate actions in the trial court seeking declaratory judgments under section 2—701 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—701). Plaintiffs named as defendants their former employees, the Department, and McNeil, superintendent of the Department's wage-claims division. The trial court consolidated these two actions with a third that is not before us on

appeal.

All parties moved for summary judgment. Plaintiffs alleged that (1) Federal law preempted the Department's regulation of their vacation plans, (2) the Department misinterpreted the Illinois Wage Payment and Collection Act (Ill. Rev. Stat. 1983, ch. 48, par. 39m—1 *et seq.*), and (3) the statute impaired their right to contract with their employees. On February 22, 1985, the trial court granted summary judgment for defendants, ruling that Federal law did not preempt the Department's regulation of plaintiffs' vacation plans, that the Department reasonably interpreted the Illinois Wage Payment and Collection Act in ruling that employees earned vacation pay *pro rata*, and that the statute did not impair plaintiffs' right to contract with their employees. Plaintiffs appeal, repeating the first two of their three arguments before the trial court.

A trial court may properly enter summary judgment where the record presents purely questions of law. (*People ex rel. Rappaport v. Drazek* (1975), 30 Ill. App. 3d 310, 313, 332 N.E.2d 532, 535.) In the instant case, all parties agreed on the material facts before the trial court and continue to do so. The only issues before the trial court were the applicability of the Illinois Wage Payment and Collection Act and the Department's interpretation of that statute. Thus, the trial court was faced with pure questions of law. Consequently, summary judgment was proper. *People ex rel. Rappaport v. Drazek* (1975), 30 Ill. App. 3d 310, 313-14, 332 N.E.2d 532, 535.

## I

■■ ■ Plaintiffs first contend that Federal law preempts the Department's regulation of their vacation plans. They argue that their vacation plans are employee benefit plans within the purview of the Employee Retirement Income Security Act of 1974 (29 U.S.C. (1982), sec. 1001 *et seq.*) (hereinafter ERISA), which shields the plans from State regulation. Defendants contend that plaintiffs' vacation plans are not employee benefit plans within the purview of ERISA. Defendants further contend that it does not matter whether their plans are within ERISA because the statute does not prevent every form of State regulation of employee compensation; further, it specifically allows for concurrent State jurisdiction over vacation plans.

Recognizing the broad scope of ERISA, we agree with the trial court that (A) the State could not regulate plaintiff's vacation plans if they fell within the purview of the statute, but (B) plaintiffs' vacation plans are not employee benefit plans within the meaning of ERISA. We base these conclusions on Federal law because the decisions of the

Federal courts are controlling upon our court in the interpretation of a Federal statute. *Elgin, Joliet & Eastern Ry. Co. v. Industrial Com.* (1956), 9 Ill. 2d 505, 507, 138 N.E.2d 553, 555; *Montefelice v. Terminal R.R. Association* (1981), 100 Ill. App. 3d 858, 860, 427 N.E.2d 370, 372.

## A

■ ERISA subjects to Federal regulation plans that provide employees with fringe benefits. ERISA is a comprehensive statute that Congress designed to promote the interests of employees and their beneficiaries in employee benefit plans. "Employee benefit plans" include both pension plans and welfare plans. The statute sets various uniform standards for both pension and welfare plans, including rules that require reporting, disclosure and fiduciary responsibility. ERISA does not mandate that employers provide any particular benefits and does not, by itself, proscribe discrimination in the provision of employee benefits. (*Shaw v. Delta Air Lines, Inc.* (1983), 463 U.S. 85, 90-91, 77 L. Ed. 2d 490, 497, 103 S. Ct. 2890, 2896-97.) Vacation pay plans are employee benefit plans under ERISA. 29 U.S.C. sec. 1002(1) (1982).

Defendants invoke the general rule that courts disfavor Federal preemption of State law in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that Congress has unmistakenly so ordained. *Alessi v. Raybestos-Manhattan, Inc.* (1981), 451 U.S. 504, 522, 68 L. Ed. 2d 402, 416, 101 S. Ct. 1895, 1905-06.

ERISA, however, has a broad preemptive scope. Section 514(a) of the statute provides that its provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" that it covers. (29 U.S.C. sec. 1144(a) (1982).) A law "relates to" an employee benefit plan if it has a connection with or reference to such a plan. (*Shaw v. Delta Air Lines, Inc.* (1983), 463 U.S. 85, 96-97, 77 L. Ed. 2d 490, 501, 103 S. Ct. 2890, 2900.) Section 5 of the Illinois Wage Payment and Collection Act relates to vacation plans. Ill. Rev. Stat. 1983, ch. 48, par. 39m—5.

Defendants further contend that ERISA does not preempt the actions of the Department because the statute provides for concurrent jurisdiction with State courts. The trial court correctly noted the limited scope of concurrent jurisdiction under ERISA. A State court under ERISA's concurrent jurisdiction (29 U.S.C. sec. 1132(e)(1) (1982)), may hear only those actions that employees or their beneficiaries bring to recover benefits, enforce rights, or to clarify rights to future

benefits under the terms of a plan. (29 U.S.C. sec. 1132(a)(1)(B) (1982).) The decision of the plan administrator binds the court unless a plaintiff can show that it was arbitrary, capricious, fraudulent, or in bad faith. (*Sly v. P. R. Mallory & Co.* (7th Cir. 1983), 712 F.2d 1209, 1211.) Here, defendants do not merely seek the enforcement or clarification of plaintiffs' vacation plans; rather, they challenge the validity of those plans under State law. We conclude that if plaintiffs' vacation plans were employee benefit plans under ERISA, the Department would lack jurisdiction to grant the relief that defendants sought.

B

We agree with the trial court that plaintiffs' vacation plans are not employee benefit plans within the meaning of ERISA. The court correctly based its ruling on *National Metalcrafters, A Division of Keystone Consolidated Industries v. McNeil* (N.D. Ill. 1985), 602 F. Supp. 232, *rev'd on other grounds* (7th Cir. 1986), 784 F.2d 817, a decision from the United States District Court for the Northern District of Illinois.

The facts in *National Metalcrafters* are similar to those in the case at bar. There, plaintiff, an employer, refused to pay defendants, its employees, vacation pay due under a collective bargaining agreement with a labor union. An employer who refuses to pay wages, wage supplements, or final compensation to an employee violates the Illinois Wage Payment and Collection Act. (Ill. Rev. Stat. 1983, ch. 48, par. 39m—14(a).) Defendants filed claims against plaintiff with the Department, which determined that plaintiff owed defendants vacation pay. Before the Department could begin enforcement proceedings, plaintiff brought an action in Federal district court seeking to enjoin the Department from enforcing its determination. Plaintiff argued that ERISA, the National Labor Relations Act (29 U.S.C. sec. 151 *et seq.* (1982)), and section 301 of the Taft-Hartley Act (29 U.S.C. sec. 185 *et seq.* (1982)) preempted Illinois law and, thus, the Department's actions were improper. *National Metalcrafters, A Division of Keystone Consolidated Industries v. McNeil* (N.D. Ill. 1985), 602 F. Supp. 232, 234.

The district court in *National Metalcrafters*, per Leighton, J., held that ERISA did not preempt the Illinois Wage Payment and Collection Act because the vacation plan at issue was not an employee benefit plan under ERISA. The court noted that ERISA requires that a written instrument establish an employee benefit plan, and also requires that trustees hold the assets of the plan in trust, managing and controlling them. (29 U.S.C. secs. 1102, 1103 (1982).) After examining

ERISA and Federal case law, the district court concluded that a vacation plan must meet these requirements before it could consider the plan an employee benefit under ERISA. Applying these principles to the facts before it, the court found neither a trust agreement, a plan description, nor any annual report. It also found no established fund, no beneficiaries, and no fiduciaries. The court, therefore, concluded that the vacation plan was not an employee benefit plan under ERISA. Thus, ERISA did not preempt the Illinois Wage Payment and Collection Act. *National Metalcrafters, A Division of Keystone Consolidated Industries v. McNeil* (N.D. Ill. 1985), 602 F. Supp. 232, 236-37.

The United States Court of Appeals for the Seventh Circuit reversed the district court in *National Metalcrafters* on other grounds. However, the court of appeals stated:

> "The issue we are most reluctant to decide is whether the Illinois wage payment act is preempted by ERISA. It is a difficult issue and if resolved in favor of preemption would have far-reaching consequences. It would apply not merely to companies that have collective bargaining contracts but to all companies, even those without pension plans. It would subject all companies with vacation plans to the elaborate requirements that ERISA imposes on plans within its scope, would broadly displace the regulation of vacation benefits by state law, and could bring a host of trivial cases into the federal courts. We do not have to reach the issue of preemption under ERISA because, as we are about to see, the application of Illinois' wage payment act to this particular dispute is preempted by both the National Labor Relations Act and section 301 of the Taft-Hartley Act; and we shall not reach it, or drop the slightest hint about its correct resolution." *National Metalcrafters, A Division of Keystone Consolidated Industries v. McNeil* (7th Cir. 1986), 784 F.2d 817, 822-23.

We note that the employer in *National Metalcrafters* wilfully refused to pay its workers vacation benefits in violation of a collective bargaining agreement between itself and their labor union. In the instant case, plaintiffs claim that defendants are ineligible to receive vacation pay under the terms of their vacation policies, which are simply part of their employee benefit plans. No collective bargaining agreement is present in the instant case to trigger the Federal labor laws, on which the court of appeals focused exclusively.

The reasoning of the district court is persuasive. Here, as in *National Metalcrafters*, we must confront the applicability of the Illinois

Wage Payment and Collection Act to unfunded vacation plans. Plaintiffs admit that no trust agreement, contract, or other writing exists that establishes their vacation plans under ERISA. Plaintiffs further admit that they did not establish a trust to fund their vacation plans; rather, their general assets fund their plans. The record discloses the existence of neither plan descriptions nor annual reports. The record shows neither established funds, beneficiaries, nor fiduciaries, all of which ERISA requires.

Despite these deficiencies, plaintiffs still contend that their vacation plans fall under ERISA, which would shield the plans from Illinois law. Plaintiffs assign error to *National Metalcrafters* and to *Taggart Corp. v. Life & Health Benefits Administration, Inc.* (5th Cir. 1980), 617 F.2d 1208, on which the *National Metalcrafters* court based its decision. Relying instead on *Donovan v. Dillingham* (11th Cir. 1982), 688 F.2d 1367, and *California Hospital Association v. Henning* (C.D. Cal. 1983), 569 F. Supp. 1544, plaintiffs argue that their vacation plans fall under ERISA because a reasonable person can determine the intended vacation benefits and the class of beneficiaries, and that their plans have a source of financing. Plaintiffs contend that the trial court erred in relying on *National Metalcrafters* instead of *Donovan* and *Henning*.

In *Taggart Corp.*, the United States Court of Appeals for the former Fifth Circuit used clear and simple criteria to determine the existence of an employee benefit plan under ERISA. The *Taggert Corp.* court found that the employee benefit plan before it did not fall under ERISA because the plan lacked assets, was liable for no benefits, and was not funded by a trust. *Taggart Corp. v. Life & Health Benefits Administration, Inc.* (5th Cir. 1980), 617 F.2d 1208, 1211.

In *Donovan*, however, the United States Court of Appeals for the Eleventh Circuit rejected the *Taggart Corp.* analysis and determined that the employee benefit plan before it fell under ERISA. The *Donovan* court stated:

"In summary, a 'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits. To be an *employee* welfare benefit plan, the intended benefits must be \*\*\* vacation benefits, \*\*\*; the intended beneficiaries must include union members, employees, former employees or their beneficiaries; and an employer or employee organization, or both, and not individual employees or entrepreneurial businesses, must establish or maintain the plan, fund, or

program." *Donovan v. Dillingham* (11th Cir. 1982), 688 F.2d 1367, 1373.

The United States District Court for the Central District of California, in *California Hospital Association v. Henning*, explicitly rejected the *Taggart Corp.* analysis of employee benefit plans under ERISA in favor of the reasonableness test of *Donovan*. The *Henning* court concluded that "any plan, fund, or program, as those terms are defined by *Donovan*, maintained for employee vacation benefits by an employer engaged in activities affecting interstate commerce, is an employee welfare benefit plan subject to ERISA coverage, irrespective of whether such arrangement is funded, trusteed, or embodied in a writing." *California Hospital Association v. Henning* (C.D. Cal. 1983), 569 F. Supp. 1544, 1546.

The trial court correctly relied on the analysis found in *National Metalcrafters* and correctly rejected the reasonableness test of *Donovan* and *Henning*. We agree with the trial court, which stated that the decision in *Henning* "would make every employer's vacation plan subject to only ERISA control and regulations regardless of the plans, its source of financing, or its regulation and administration. All that would be required to preempt State regulation would be a plan providing vacation benefits by an employer engaged in activity in interstate commerce. Such a construction, it seems to this court, defeats the very purpose of the ERISA and in some respects its very terms. ERISA was not intended to shield an employer from small wage claims of an employee arising out of vacation benefits provided by an employment vacation plan." The Seventh Circuit Court of Appeals recognized the far-reaching effects of Federal preemption under ERISA when it reversed the district court in *National Metalcrafters* on other grounds. *National Metalcrafters, A Division of Keystone Consolidated Industries v. McNeil* (7th Cir. 1986), 784 F.2d 817, 822-23.

Additionally, the United States Court of Appeals for the Ninth Circuit recently reversed the district court in *Henning*, on which plaintiffs rely. (*California Hospital Association v. Henning* (9th Cir. 1985), 770 F.2d 856.) Examining the background of ERISA, the court of appeals noted that the government imposed wage freezes during World War II and the Korean conflict. As a result, pensions and other fringe benefits multiplied, becoming a means of compensating workers in lieu of increased wages. Employers developed a wide variety of methods to finance and administer these benefits. Evidence before Congress reflected two principal abuses by employers: mismanagement of funds collected to finance such benefits, and failure to pay employees the benefits that they promised. 770 F.2d 856, 859.

Applying the background of ERISA to vacation plans, the court of appeals stated:

"Traditional vacations during which the employer continued to pay the employees' regular wages presented neither of the evils Congress intended to address. Wages are ordinarily paid in cash out of the resources of the business whether the employee is at work or on vacation. There is no fund to administer and no special risk of loss or nonpayment. Nothing in the legislative history suggests Congress intended to regulate such payments." *California Hospital Association v. Henning* (9th Cir. 1985), 770 F.2d 856, 859.

Further, the *Donovan* reasonableness test directly contradicts regulations of the United States Department of Labor that exempt from ERISA coverage vacation benefits paid out of an employer's general assets. (*California Hospital Association v. Henning* (9th Cir. 1985), 770 F.2d 856, 859-60.) The administrative interpretation of ERISA by the United States Department of Labor, which Congress entrusted with the statute's enforcement, is entitled to great weight. (*Abella v. W. A. Foote Memorial Hospital, Inc.* (6th Cir. 1984), 740 F.2d 4, 5; *National Metalcrafters, A Division of Keystone Consolidated Industries v. McNeil* (N.D. Ill. 1985), 602 F. Supp. 232, 237.) We hold that the trial court correctly relied on the analysis in *National Metalcrafters* and correctly rejected *Donovan* and *Henning* in ruling that plaintiffs' vacation plans are not employee benefit plans under ERISA.

## II

■ Plaintiffs next contend that the trial court erred in upholding the Department's interpretation of section 5 of the Illinois Wage Payment and Collection Act, that an employee earns vacation pay *pro rata*, and the agency's determination that plaintiffs' vacation plans violated the Act. Plaintiffs argue that both the plain language and the legislative history of section 5 support their position that an employment contract or employer's policy controls the earning of vacation pay.

Section 5 of the Illinois Wage Payment and Collection Act provided:

"Every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee. Where such employee requests in writing that his final compensation be paid by check and mailed to him, the employer shall comply with this request.

Whenever a contract of employment or employment policy provides for paid vacations, and an employee resigns or is terminated without having taken all of his earned vacation time, all earned vacation shall be paid to him as final compensation at his final rate of pay in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of earned vacation time upon separation." (Ill. Rev. Stat. 1981, ch. 48, par. 39m—5.)

We note that the legislature amended section 5 of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 39m—5). However, since the amendment came after this cause arose, it is not before us.

Plaintiffs invoke the principles that courts should give statutory language its plain and ordinary meaning and are bound by the clear and unambiguous language of the statute itself. Plaintiffs further rely on the rule that courts should determine the intent and meaning of a statute from the entire statute and that courts should construe each section and provision in connection with every other section and provision. *Totten v. State Board of Elections* (1980), 79 Ill. 2d 288, 291-92, 403 N.E.2d 225, 227-28.

Pointing to the second paragraph of section 5, plaintiffs argue that the statute looks to the employment contract because it refers to the "contract of employment or employment policy" three times, and also uses the phrase "earned vacation," which the statute nowhere defines. Thus, plaintiffs argue, it is the "contract of employment or employment policy" that determines the definition of "earned vacation."

We agree with plaintiffs that a court of review need not defer to the conclusion of the finder of fact in construing a statute. However, when an administrative agency is the finder of fact as well as the interpreter of law, a reviewing court is in a less than plenary position. (*Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 550, 370 N.E.2d 1198, 1202.) Courts will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute. While an administrative agency's interpretation of a statute is not binding on the court, it expresses an informed source for ascertaining the legislative intent. A significant reason for this deference is that agencies can make informed judgments upon the issues, based upon their experience and expertise. *Illinois Consolidated Telephone Co. v. Illinois Commerce Com.* (1983), 95 Ill. 2d 142, 152-53, 447 N.E.2d 295, 300; *Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 550-51, 370 N.E.2d 1198.

■ We conclude that the Department's interpretation of the Illi-

nois Wage Payment and Collection Act—that an employee earns vacation pay *pro rata*—was reasonable and consistent with Illinois law and the law of other jurisdictions. Giving the language of the Act its plain and ordinary meaning, we disagree with plaintiffs' contentions that the statute looks to the employment contract or employment policy to define an earned vacation. The Act expressly includes the monetary equivalent of earned vacation as part of the final compensation to discharged employees (Ill. Rev. Stat. 1981, ch. 48, par. 39m—2). Further, section 5 expressly forbids an employment contract or employment policy to forfeit an employee's earned vacation pay upon separation. Ill. Rev. Stat. 1981, ch. 48, par. 39m—5.

The vacation policies of plaintiffs do precisely this. Under both policies, Murray and Kilroy did not earn vacation pay *pro rata*; rather, their vacation pay depended on specific dates and was subject to forfeiture. Thus, plaintiffs' vacation plans violate section 5 of the Act.

■■■ Section 5 of the Act is also consistent with Illinois law. Generally, a party to a contract may not take advantage of a condition precedent the performance of which he has rendered impossible. (*Barrows v. Maco, Inc.* (1981), 94 Ill. App. 3d 959, 966-67, 419 N.E.2d 634, 639, citing *Goldstein v. Rosenberg* (1947), 331 Ill. App. 374, 375, 73 N.E.2d 171, 172.) Further, when an employee renders services to an employer, her right to receive the compensation that the employer promised vests as much as her right to receive wages or any other form of compensation. The lack of a promise to vest does not revoke the employer's obligation to pay. The employer must return those benefits that he derives from the continued labor of the employee. (*Kulins v. Malco, A Microdot Co.* (1984), 121 Ill. App. 3d 520, 526, 459 N.E.2d 1038, 1044.) Additionally, we have held that an employee earns severance pay, another form of compensation, in part each week that he or she works. 121 Ill. App. 3d 520, 525, 459 N.E.2d 1038.

Applying the above principles to the case at bar, we note that Murray and Kilroy did not leave their jobs voluntarily; they were fired. Further, plaintiffs fired them shortly before the date on which they would have received the vacation pay earned for the entire year. Honesty and fair dealing require us to agree with the ruling of the Department.

We further note that the Supreme Court of California reached the same conclusion as the Department in *Suastez v. Plastic Dress-Up Co.* (1982), 31 Cal. 3d 774, 647 P.2d 122, 183 Cal. Rptr. 846. Contrary to plaintiffs' contentions, we agree with defendants and the trial court that the facts in *Suastez* are very similar to those in the instant case and that its reasoning is persuasive. In *Suastez*, defendant employer

fired plaintiff employee before the anniversary of his employment. Company policy provided that an employee did not receive vacation pay until the anniversary of his or her employment. Plaintiff requested the *pro rata* share of his vacation pay; defendant refused. Plaintiff brought an action in the trial court under section 227.3 of the California Labor Code, which is similar to section 5 of our Illinois Wage Payment and Collection Act. The trial court ruled that, under their Code, employees earned vacation pay *pro rata*, and defendant appealed. 31 Cal. 3d 774, 776-78, 647 P.2d 122, 123-24, 183 Cal. Rptr. 846, 847-48.

The supreme court unanimously held that "[t]he right to a paid vacation, when offered in an employer's policy or contract of employment, constitutes deferred wages for services rendered. Case law from this state and others, as well as principles of equity and justice, compel the conclusion that a proportionate right to a paid vacation 'vests' as the labor is rendered." (*Suastez v. Plastic Dress-Up Co.* (1982), 31 Cal. 3d 774, 784, 647 P.2d 122, 128, 183 Cal. Rptr. 846, 852.) The court reasoned that "once it is acknowledged that vacation pay is not an inducement for future services, but is compensation for past services, the justification for demanding that employees remain for the entire year disappears. If some share of vacation pay is earned daily, it would be both inconsistent and inequitable to hold that employment on an arbitrary date is a condition precedent to the vesting of the right to such pay." (31 Cal. 3d 774, 782, 647 P.2d 122, 127, 183 Cal. Rptr. 846, 851.) We agree with the holding and reasoning of *Suastez* and hold that the trial court was correct in relying on the decision.

In summation, we hold that plaintiffs' vacation plans are not employee benefit plans under ERISA; thus, ERISA does not preempt Illinois law and the proceedings of the Department were proper. We further hold that the Department's interpretation of section 5 of the Act that an employee earns vacation pay *pro rata* was reasonable and consistent with Illinois law and the law of other jurisdictions.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN, P.J., and McMORROW, J., concur.