MUELLER COMPANY, Plaintiff-Appellee, v. THE DEPARTMENT OF LABOR *et al.*, Defendants-Appellants (Hugh Ford, Defendant).

Fourth District   No. 4—88—0894

Opinion filed August 17, 1989.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Deborah L. Ahlstrand, Assistant Attorney General, of Chicago, of counsel), for appellants.

Michael J. Kehart and James E. Peckert, both of Kehart, Shafter & Hughes, P.C., of Decatur, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

This case comes on appeal from the circuit court of Macon County. The defendant Hugh Ford was employed by the plaintiff Mueller Company from March 3, 1986, until he left the company voluntarily on September 11, 1987. Upon leaving the firm, Ford sought to be paid for the *pro rata* vacation time which he had earned but not taken during his second year of employment. The plaintiff refused Ford's request.

Faced with this refusal, Ford filed a claim with the Department of Labor (Department). On February 26, 1988, the Department, after holding a hearing on Ford's complaint, issued a wage payment de-

mand letter to the plaintiff finding Ford was entitled to $914.19. This amount represented the value of his *pro rata* unused vacation time.

On March 18, 1988, the plaintiff filed a two-count complaint in the circuit court of Macon County. Count I sought administrative review of the Department's finding and count II sought declaratory judgment that the Department's findings were contrary to law. On May 4, 1988, count I of the complaint was dismissed on motion of plaintiff, leaving only the declaratory judgment action.

The circuit court heard argument on the legal issues and on November 9, 1988, found the decision of the Department was contrary to law. The court decided the authority relied on by the Department had been superseded by an amendment to the Illinois Wage Payment and Collection Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 39m—1 *et seq.*) and the terms of the employment contract would control in this case. The court found that because the contract provided an employee became entitled to vacation time only after the end of the plaintiff's fiscal year and Ford had not completed the fiscal year, he was not entitled to any compensation for vacation time. The Department, which was also a defendant in the circuit court action, filed a notice of appeal on December 7, 1988.

The fundamental issue in contention here is the application of the Act to the employment contract. Both parties concede that under the prior language of the Act Ford would be entitled to be paid for his unused vacation time. The plaintiff argues the legislature, by amending the Act, has materially altered its meaning and overturned prior precedent. The defendants argue the amendment merely represents a clarification of the Act and existing precedent is still valid.

Plaintiff's vacation policy provided in part:

"INITIAL VACATION

After six months of service, new employees may take one-half of the vacation that they will have earned upon completion of their one-year anniversary. Then upon completion of one years [*sic*] service, the employee may take the other one-half of vacation due. Employees hired in October or November should attempt to complete their initial vacation before the end of the fiscal year. In unusual circumstances, special arrangements can be made to ensure the employee is able to schedule a vacation.

SUBSEQUENT VACATION

After the initial vacation, an employee becomes eligible for subsequent vacations at the beginning of each fiscal year. An exception to this is those years when vacation allotments advance. During these years, the employee will be allotted his

regular vacation at the start of the fiscal year and the additional vacation on his anniversary date.

TERMINATION

Upon termination, the employee will be paid for any unused vacation for the current fiscal year."

The language of the Act provides in part:

"Unless otherwise provided in a collective bargaining agreement, whenever a contract of employment or employment policy provides for paid vacations, and an employee resigns or is terminated without having taken all vacation time *earned in accordance with such contract of employment or employment policy*, the monetary equivalent of all earned vacation shall be paid to him or her as part of his or her final compensation at his or her final rate of pay and no employment contract or employment policy shall provide for forfeiture of earned vacation time upon separation." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 48, par. 39m—5.

Prior to January 1, 1984, the Act read:

"Whenever a contract of employment or employment policy provides for paid vacations, and an employee resigns or is terminated without having taken all of his earnèd vacation time, *all earned vacation shall be paid to him as final compensation at his final rate of pay in accordance with such contract of employment* or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of earned vacation time upon separation." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 48, par. 39m—5.

The appellate court has previously considered the application of the Act prior to its amendment. In *Golden Bear Family Restaurants, Inc. v. Murray* (1986), 144 Ill. App. 3d 616, 494 N.E.2d 581, the court was presented with a case where two employees were fired shortly before completing their first year with the employer and becoming eligible for their vacations. In its opinion the court stated:

"We conclude that the Department's interpretation of the Illinois Wage Payment and Collection Act—that an employee earns vacation pay *pro rata*—was reasonable and consistent with Illinois law and the law of other jurisdictions. Giving the language of the Act its plain and ordinary meaning, we disagree with plaintiffs' contentions that the statute looks to the employment contract or employment policy to define an earned vacation. The Act expressly includes the monetary equivalent

of earned vacation as part of the final compensation to discharged employees (Ill. Rev. Stat. 1981, ch. 48, par. 39m—2). Further, section 5 expressly forbids an employment contract or employment policy to forfeit an employee's earned vacation pay upon separation. Ill. Rev. Stat. 1981, ch. 48, par. 39m—5.

The vacation policies of plaintiffs do precisely this. Under both policies, Murray and Kilroy did not earn vacation pay *pro rata*; rather, their vacation pay depended on specific dates and was subject to forfeiture. Thus, plaintiffs' vacation plans violate section 5 of the Act." *Golden Bear*, 144 Ill. App. 3d at 626-27, 494 N.E.2d at 588.

The court in *Golden Bear* specifically held that a vacation plan where the employee did not earn vacation benefits *pro rata* was contrary to the forfeiture clause of section 5 of the Act. We note the 1983 amendment did not alter the forfeiture clause and, for this reason alone, to reverse is appropriate.

However, the plaintiff argues that under the amended Act, the contract controls over the statute—in contrast to the prior Act. The plaintiff argues its employment contract is controlling here and this policy provided that an employee became "eligible" for vacation only with the beginning of each fiscal year, *i.e.*, when Ford left the plaintiff's employ prior to the beginning of the fiscal year, he had yet to become eligible for the vacation benefits.

We do not agree with plaintiff that the word "eligible" as used in its employment contract means the same as "earned" in the Act. Plaintiff argues its employees do not become "eligible" for their vacation time until the beginning of the fiscal year and they have not "earned" their vacation for purposes of the Act until that time.

Plaintiff's reasoning is flawed for a number of reasons. First, plaintiff's own vacation policy makes a distinction between when vacation time is earned and when an employee becomes eligible to take that time. The policy states an employee is entitled to two weeks of vacation during each of his first two years of employment. With additional years of service, the employee becomes eligible for additional vacation time. This additional vacation time becomes earned not at the beginning of the fiscal year but on the anniversary of the employee's hiring. This clearly indicates an employee does not become "eligible" to take additional vacation time until he has "earned" it by completing the necessary years of service. Under the reading of the employment contract urged by the plaintiff, an employee could "earn" his vacation time only by being presently employed by the plaintiff on the first day of each fiscal year. Such a reading would require us to

find an employee "earns" his vacation benefits for a whole year on the basis of his employment status on a single day, not by his labors on the other 364. This result would defy the common understanding of the word "earn" and we decline to adopt it.

█▋█ Secondly, plaintiff contends the amendment to the Act has created a material change which favors its construction. It finds the language to be unambiguous and contends this court cannot consider the legislative history to interpret the Act. In construing statutes, the judicial role is to ascertain the intent of the legislature and give it effect, examining the entire statute for guidance. The court should seek to determine the objective which the statute sought to accomplish and the evil it desired to remedy. (*City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 473 N.E.2d 1313.) Keeping this principle in mind, we do not find the amendment of the Act materially altered its effect when considered as a whole. The primary objective of the Act is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits. To follow the interpretation urged by the plaintiff would allow any employer to negate the protection provided by the Act simply by varying the terms of its employment policy or contract. We note that such variations are permitted by the Act in the context of collective bargaining but not in the situation presented to us here. Our review of the legislative history confirms the amendment was intended merely to clarify the language of the Act and no retreat from the substantive protections of the prior Act was intended.

For the reasons discussed above, the decision of the circuit court was in error and is reversed.

Reversed.

LUND and GREEN, JJ., concur.