2024 IL App (1st) 230127-U

THIRD DIVISION
February 14, 2024

No. 1-23-0127

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

---

| | |
|---|---|
| SHEILA O'GRADY, | ) Appeal from the Circuit Court of |
| | ) Cook County. |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) No. 2020 L 013005 |
| | ) |
| SSI (U.S.), INC. d/b/a SPENCER STUART; and | ) |
| DAVID RASMUSSEN; | ) |
| | ) Honorable Jerry A. Esrig, |
| Defendants-Appellants. | ) Judge, presiding. |

---

JUSTICE D.B. WALKER delivered the judgment of the court.
Justices Lampkin and Van Tine concurred in the judgment.

### ORDER

¶ 1    ***Held:*** This court improvidently granted the interlocutory appeal under Supreme Court Rule 308 because the question presented encompasses factual issues inappropriate for consideration under Rule 308 and the matter does not otherwise satisfy Rule 308 requirements. We vacate our previous order and dismiss this appeal.

¶ 2    Plaintiff Sheila O'Grady filed a complaint alleging, *inter alia*, violations of the Illinois Wage Payment and Collection Act (the Act) against her former employer, defendant SSI (U.S.), Inc. (SSI), and SSI's general counsel, defendant David Rasmussen. Defendants moved to dismiss the complaint, which the trial court denied in part as to plaintiff's claim brought under the Act and

granted in part as to other claims.[1]  The court then denied defendants' motion to reconsider but certified the following question for interlocutory appeal pursuant to Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019):  "Does an employer violate the *** Act when it refuses to pay an earned bonus to a former employee because the amount of the bonus could not be calculated until after the termination of the employee's employment and after the next regularly scheduled payday?"

¶ 3      On February 17, 2023, a different panel of this division granted defendants' application for interlocutory appeal.  For the following reasons, we vacate our prior order that granted defendants' application, deny defendants' application, and dismiss this appeal.[2]

¶ 4                                        BACKGROUND

¶ 5      On December 30, 2021, plaintiff filed her second amended complaint, which is the operative pleading in this appeal.  Count III of plaintiff's second amended complaint alleged that SSI violated the Act for failure to pay her final compensation, including her "earned bonuses."  Count IV was substantially the same as count III but alleged that Rasmussen violated the same provisions of the Act "in the manner set forth in Count III."  Our factual recitation therefore primarily relies upon both the allegations common to all counts and those with respect to count III.

¶ 6      Plaintiff's complaint alleged that she began working for SSI in April 2012 as a consultant providing executive searches and related services to SSI's corporate clients.  Plaintiff worked continuously for SSI until September 9, 2019, when she provided notice of her resignation and her intention to start working for another employer.  Although plaintiff stated that she would continue to work at SSI for "several more weeks" to finish various outstanding projects and transition her

---

[1]  Although the court also denied defendants' motion to dismiss a claim alleging a fraudulent filing of Internal Revenue Service (IRS) Form 1099B (count VII), it subsequently granted plaintiff's voluntary dismissal of that count.

[2]  This appeal has been resolved without oral argument upon the entry of a separate written order pursuant to Illinois Supreme Court Rule 352(a) (eff. July 1, 2018).

clients to other SSI consultants, plaintiff discovered that she could no longer access her work files or e-mail at the end of September 9, 2019. On September 12, 2019, plaintiff met with Rasmussen, who informed her that SSI would waive various restrictive covenants in her employment agreement with SSI, and that SSI would consider her resignation effective as of September 9, 2019.

¶ 7    SSI's compensation system provided that plaintiff earned credit for executive placements that were invoiced and paid during the fiscal year. The compensation model, which plaintiff characterized as "commission-based," focused on three factors: "O" (for "Origination," the developing of "personal and institutional relationships that lead to new business opportunities"), "C" (for "Conversion," the persuading of a client that SSI has "the best team to execute a given assignment and thereby win the mandate"), and "E" (for "Execution," the rewarding of the team that "together, manage the specific client relationship and deliver the solution to the client").

¶ 8    SSI would then take a weighted average ("WA") of the three factors (resulting in the ungainly acronym "WAOCE") and further multiply this weighted average by an additional coefficient (the "MRI factor") to account for, *inter alia*, "economic differences" across SSI offices. According to plaintiff, SSI selected the MRI factor "at the outset of each fiscal year." The eventual "MRI-Adjusted WAOCE" value of a consultant would then be placed within one of several categories (termed, "competitive bands") from which a "gross payout rate" would be applied.

¶ 9    Plaintiff alleged that she had learned early on that the MRI-Adjusted WAOCE was merely multiplied by the gross payout rate to arrive at a consultant's overall compensation, from which deductions were made for the base salary and certain employee benefits provided by SSI. This resulting difference constituted the "OCE Bonus." Plaintiff added that the bonus payments were a significant part of her compensation and that she would receive a monthly report entitled, "OCE for Bonus Model Report." She attached to her complaint the report dated August 31, 2019, which reflected a WAOCE of $1,876,787 and a MRI-adjusted WAOCE of $2,815,182 for the period

beginning October 1, 2018, and ending August 31, 2019. This latter amount placed plaintiff in the middle of the competitive bands, resulting in a 2019 gross payout rate of between 41%-43%. Plaintiff thus stated that she was entitled to an OCE earned bonus (net of her base salary of various SSI-paid benefits) of $614,000, as well as other statutory damages, costs, and attorney fees.

¶ 10    Defendants filed a motion to dismiss plaintiff's second amended complaint.[3] On June 27, 2022, the trial court granted defendants' motion in part. The court denied defendants' motion as to counts III and IV (alleging a failure to pay "earned bonuses" in violation of the Act against SSI and Rasmussen, respectively) and as to count VII (alleging the fraudulent filing of IRS Form 1099-B against SSI). The court granted defendants' motion in all other respects.

¶ 11    On June 28, 2022, defendants filed a motion to reconsider. In their motion and at the December 2, 2022 hearing on their motion, defendants argued in part that the trial court's finding that plaintiff's bonus at issue was not calculable at the time of separation was "fundamentally incompatible" with the court's additional finding that the bonus was recoverable as "final compensation" as defined in the Act. In the alternative, defendants asked the trial court "for certification of the [o]rder [*sic*]" denying their motion to dismiss counts III and IV for immediate interlocutory appeal pursuant to Rule 308.

¶ 12    On December 6, 2022, the trial court entered an order denying defendants' motion to reconsider. The court, however, continued defendants' motion, in the alternative, to certify for immediate interlocutory appeal to December 21, 2022. The court further directed defendants to submit their proposed certified question by December 9, 2022. Defendants subsequently sought a certification of the following question for interlocutory appeal pursuant to Rule 308:

---

[3] Defendants have not included their motion to dismiss in the record on appeal.

"Whether a former employee may state a claim for final compensation under Section 5 of the *** Act for an allegedly 'earned bonus,' where she voluntarily resigned her employment, and the amount of the alleged bonus was not ascertainable at the time of her resignation or by her next regularly scheduled payday; or, instead, whether the bonus cannot constitute final compensation (and thus cannot constitute an 'earned bonus' under the *** Act), where the amount of the allegedly 'earned bonus' is not ascertainable within the timeframe required for payment of final compensation set forth in Section 5 of the *** Act, as the Appellate Court held in *McLaughlin v. Sternberg Lanterns, Inc.*, 395 Ill. App. 3d 536, 545 (2d Dist. 2009)?"

Defendants' proposed order further stated that there was a substantial ground for difference of opinion based upon a purported conflict between *McLaughlin* and *Camillo v. Wal-Mart Stores, Inc.*, 221 Ill. App. 3d 614 (1991).

¶ 13 At the hearing on defendants' motion to certify, defendants reiterated their argument that the court's finding that the OCE bonus was not calculable was fundamentally incompatible with its earlier ruling that the bonus was earned, and thus final compensation pursuant to the Act. The court then responded, "Well, then I agree with [plaintiff's counsel] that there is no appropriate 308 question to certify here, because if the issue is *** that this isn't an earned bonus, then we're talking about a huge complex factual finding that the Appellate Court would have to make and which is not addressed in your question."

¶ 14 Defense counsel recalled that the trial court found that the bonus was incapable of calculation because it was "dependent upon firm-wide performance for the year," which was not

known on September 23, 2019 (the final date under the Act that defendants had to pay plaintiff her final compensation). The trial court responded that, in its view, whether it was calculable and whether it was earned were "two different things." The court further explained, "Whether or not [the bonus is] final compensation under the Act may or may not depend upon whether it can be calculated as of the date of the last regularly scheduled employment. But I don't think the question of whether it's earned or not turns upon whether it can be calculated or not." The court then stated that it would include the term "earned" before bonus in the certified question.

¶ 15     On December 21, 2022, the court issued a written order certifying the question that is the subject of this appeal, namely, whether an employer violates the Act for failure to pay "an earned bonus" to a former employee because the amount of that bonus allegedly could not be calculated until after both (1) the employee's final workday and (2) the next regularly scheduled payday. The court agreed that the question involved a question of law on which there were substantial grounds for a difference of opinion, based primarily upon the court's view that a decision of the second district of this court (*McLaughlin v. Sternberg Lanterns, Inc.*, 395 Ill. App. 3d 536, 545 (2009)) conflicted with both a decision of the fifth district (*Camillo v. Wal-Mart Stores, Inc.*, 221 Ill. App. 3d 614 (1991)) and also "the policy concerns underlying the *** Act." The court added that an immediate appeal would materially advance the ultimate termination of the litigation because the only remaining claims related to an alleged failure to pay an earned bonus under the Act.

¶ 16     This court granted defendants' application for interlocutory appeal prior to the filing of the record on appeal and the parties' briefs.

¶ 17                                  ANALYSIS

¶ 18     At the outset, we must discuss the scope of our jurisdiction as to interlocutory appeals brought pursuant to Rule 308. As a general rule, reviewing courts have jurisdiction to review only

final judgments entered in the trial court, absent a statutory exception or supreme court rule. See *In re Marriage of Verdung*, 126 Ill. 2d 542, 553 (1989).

¶ 19 Supreme Court Rule 308(a) provides one such exception. See Ill. S. Ct. R. 308(a) (eff. Oct. 1, 2019). In particular, rule 308 allows for the permissive appeal of an interlocutory order not otherwise appealable that "involves a question of law as to which there is substantial ground for difference of opinion" and for which "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.* The rule further provides that this court may in its discretion allow the appeal. *Id.* Nonetheless, appeals brought pursuant to this rule should be reserved for "exceptional circumstances, and the rule should be sparingly used." *Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21 (citing *Voss v. Lincoln Mall Management Co.*, 166 Ill. App. 3d 442, 450 (1988)). Additionally, we may reconsider our jurisdiction if our earlier ruling seems erroneous. See *Voss*, 166 Ill. App. 3d at 451 ("The question of jurisdiction is always open.").

¶ 20 Our scope of review in a Rule 308 interlocutory appeal is limited to the certified question. *Wesly v. National Hemophilia Foundation*, 2020 IL App (3d) 170569, ¶ 8. Furthermore, we should only answer a certified question if it asks a question of law and decline to answer where the ultimate disposition depends upon " 'the resolution of a host of factual predicates.' " *Spears v. Ass'n of Illinois Electrical Co-operatives*, 2013 IL App (4th) 120289, ¶ 15 (quoting *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 469 (1998)). As such, certified questions may not seek an application of the law to the facts of a specific case. *Rozsavolgyi*, 2017 IL 121048, ¶ 21. Thus, certified questions are questions of law we review *de novo*. *Id.*

¶ 21 After now reviewing the briefs and the record in this case, as well as conducting our independent research, we do not believe the interlocutory order involves a pure question of law, and we therefore lack jurisdiction to consider this matter. The certified question here involves certain provisions of the Act. It is well established that the primary objective of the Act is "to

7

ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits." *Mueller Co. v. Department of Labor*, 187 Ill. App. 3d 519, 524 (1989). Section 5 of the Act provides in pertinent part that an employer "shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5 (West 2022). Section 2 states in part that "[p]ayments to separated employees shall be termed 'final compensation' and shall be defined as wages, salaries, earned commissions, [and] earned bonuses, ***." 820 ILCS 115/2 (West 2022). "Earned bonuses" is not defined in the Act.

¶ 22    As defendants point out, the term "earned bonus" is considered to be a part of the "final compensation" that an employer must pay to a separated employee, either at the time of separation or no later than the next regularly scheduled pay period. See 820 ILCS 115/2, 5 (West 2022). The Act, however, charges the Illinois Department of Labor (Department) with enforcement of the Act (820 ILCS 115/11 (West 2022)) and authorizes the Director of Labor and her representatives to promulgate regulations to administer and enforce the provisions of the Act (820 ILCS 115/11(d) (West 2022)). It is well established that we give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute. *People v. Marshall*, 242 Ill. 2d 285, 295 (2011) (citing *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n*, 95 Ill. 2d 142, 152 (1983)).

¶ 23    The regulations created by the Department provide that in order to receive payment under the Act, a bonus must be "earned" and not "discretionary or gratuitous." 56 Ill. Adm. Code 300.500 (2014). An employee is entitled to an "earned bonus" under the Act when there is "an unequivocal promise by the employer and the employee has performed the requirements set forth in the bonus agreement between the parties and all of the required conditions for receiving the bonus set forth in the bonus agreement have been met." *Id.* § 300.500(a). By contrast, a

8

discretionary bonus is defined as one where "the terms associated with the earning of the bonus are indefinite or uncertain, such as [a] bonus being [based] upon a positive evaluation of the 'employee's performance' and not when the earning of a bonus is based on objective factors such as length of service, attendance, or sign-on or relocation incentives." *Id.* § 300.500(d). A gratuitous bonus "does not obligate the employee to do or forgo something in return for the bonus," so the employee has no right to make any demand for that type of bonus. *Id.* § 300.500(c). The Department's regulations further provide that former employees are entitled to a proportionate share of bonuses earned "by length of service, regardless of any provision in the contract or agreement conditioning payment of the bonus upon employment on a particular date, when the employment relationship was terminated by mutual consent of the parties or by an act of the employer through no fault of the former employee." *Id.* § 300.500(b).

¶ 24    Although the failure of an employer to pay an "earned" bonus as part of the final compensation would seem to be a violation of the Act, there are various conditions that could allow an employer to avoid paying an otherwise "earned" bonus without violating the Act. For example, even assuming, *arguendo*, that the bonus was "earned" pursuant to the Act, we would have to determine whether SSI made an unequivocal promise to plaintiff, and if so, whether plaintiff performed all of the requirements in the bonus agreement with SSI and all required conditions for receiving the bonus were met. If, however, the terms associated with earning the bonus were indefinite or uncertain, then plaintiff's bonus was merely discretionary, which would not entitle her to payment under the Act. Finally, plaintiff resigned on September 9, 2019, but she alleged that her intended final day of employment would be effective some time after September 30, 2019, and perhaps her final workday would be "several more weeks" after September 30. If her termination were found to be based upon mutual consent (such as SSI's acceptance of her resignation letter) or based upon an act of SSI through no fault of plaintiff (such as SSI's

termination of her employment on the same day she resigned, well in advance of her proposed resignation effective date), plaintiff could be entitled to a proportionate share of the bonus she had earned prior to her resignation without regard to any provision requiring employment on a specific date, but only *if* the bonus were based upon length of service. See *id.* § 300.500(b). All of these factual matters remain to be resolved. Further complicating this matter is the fact that, despite SSI's somewhat byzantine formula, plaintiff alleged that she received monthly reports indicating the year-to-date fees that were invoiced and paid, from which she could calculate her bonuses based upon a purportedly pre-existing 2019 compensation grid. This creates a factual dispute as to whether plaintiff's bonus was truly incapable of being calculated.

¶ 25 In sum, numerous fact questions remain open at this point in the proceedings. As noted above, we must decline to answer a certified question where, as here, the ultimate disposition depends on the resolution of a host of factual predicates. *Dowd & Dowd, Ltd.*, 181 Ill. 2d at 469.

¶ 26 In a footnote in its brief, defendants further ask that this court clarify that a claimed amount cannot be an "earned bonus" within the meaning of section 2 of the Act when it cannot be calculated within the time requirements set forth in section 5. In essence, defendants are asking us to "edit" the certified question. Although there have been instances in which this court has modified the certified question due to inartful wording (see *James v. Geneva Nursing & Rehabilitation Center, LLC*, 2023 IL App (2d) 220180, ¶ 13, *appeal allowed*, No. 130042 (November 29, 2023)), it would be inappropriate to do so in this particular case. At the hearings on defendants' motion to reconsider and their subsequent motion to certify a question for interlocutory appeal, there were extensive discussions between defendants and the trial court regarding the propriety of including the term "earned" before "bonus" in the proposed question. The trial court heard defendants' arguments that, in essence, a bonus cannot be both "earned" and also excluded from the statutory definition of "final compensation." Nonetheless, the court

rejected defendants' arguments—twice—and explicitly stated that it had already found that plaintiff's bonus was earned. Therefore, modifying the question to excise the term "earned" would answer a question the court below did not have, which is improper. See *Wesly*, 2020 IL App (3d) 170569, ¶ 8 (noting that the scope of our review is limited to the certified question).

¶ 27    Finally, we question whether there is substantial ground for a difference of opinion based upon the purported conflict in the holdings in *McLaughlin v. Sternberg Lanterns, Inc.*, 395 Ill. App. 3d 536 (2009), and *Camillo v. Wal-Mart Stores, Inc.*, 221 Ill. App. 3d 614 (1991). In *McLaughlin*, the court held that the parties' contract was not an unequivocal guarantee that the plaintiff would receive the bonus as compensation; instead, according to the court, the bonus was "clearly conditional, dependent on whether sales for the defendant increased over the previous year." *McLaughlin*, 395 Ill. App. 3d at 544. By contrast, in *Camillo*, the court observed that (1) the amount of the bonus was based solely upon the defendant's net profit and the plaintiff's length of service, and (2) at trial, the parties stipulated that, had the plaintiff worked the entire fiscal year, he would have received a bonus of $6,045.22. *Camillo*, 221 Ill. App. 3d at 616-17. We thus do not see a conflict between the two cases because (1) the bonus in *Camillo* was not clearly conditional (unlike in *McLaughlin*) and (2) the parties' stipulation in *Camillo* avoided the issue of whether the plaintiff's claimed *pro rata* bonus was calculable at the time of his termination.

¶ 28                                    CONCLUSION

¶ 29    For the above-described reasons, we vacate our order of February 17, 2023, which allowed leave to appeal in this case, and we now deny defendants' application for leave to appeal pursuant to Rule 308. Finally, we dismiss this appeal. See *Morrissey v. City of Chicago*, 334 Ill. App. 3d 251, 258-59 (2002); *Voss*, 166 Ill. App. 3d at 453.

¶ 30    Appeal dismissed.