In the

# United States Court of Appeals
## For the Seventh Circuit

No. 21-2886

TIMOTHY JOHNSON and DARRYL MOORE, on behalf of a class,
*Plaintiffs-Appellants*,

*v.*

DIAKON LOGISTICS, INC., and WILLIAM C. JARNAGIN, JR.,
*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16-cv-06776 — **Andrea R. Wood**, *Judge*.

ARGUED JUNE 1, 2022 — DECIDED AUGUST 17, 2022

Before EASTERBROOK, WOOD, and SCUDDER, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Diakon Logistics, Inc., coordinates delivery and installation of merchandise for retailers across the nation. It is incorporated in Delaware and has its principal place of business in Virginia. Diakon provided services to Innovel Solutions, Inc., a former subsidiary of Sears, Roebuck and Co. Innovel hired Diakon to get furniture and appliances from warehouses to customers' homes. Diakon, in turn, hired truck drivers to perform these deliveries.

Plaintiffs are two of those drivers, Timothy Johnson and Darryl Moore. Johnson and Moore were citizens of Illinois who drove for Diakon out of Innovel's warehouse in Romeoville, Illinois, which is about 30 miles southwest of Chicago. Innovel operated a second warehouse in Granite City, Illinois, just across the Mississippi River from St. Louis. Drivers working out of both warehouses delivered merchandise to customers of Sears in Illinois, Indiana, and Missouri.

Plaintiffs and Diakon signed contracts called "Service Agreements". Two versions of the Service Agreement—one signed before 2015 and one that governed the relations from 2015 onward—are potentially relevant. They classify the drivers as independent contractors yet include terms that set out detailed expectations for the drivers—among other things what uniforms to wear, what business cards to carry, what decals to put on their trucks, and how to perform deliveries and installations. The Service Agreements also contain choice-of-law provisions that select Virginia law to govern the parties' relations. The clause in the pre-2015 version reads: "This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia without regard to conflict of law rules." The later-signed agreements are more expansive: "The law of the Commonwealth of Virginia shall govern all interpretations of this Agreement or any rights or liabilities stemming from it or related to it in any such action. The obligations in this paragraph shall survive termination of the Agreement."

The Service Agreements authorize Diakon to deduct fees and penalties from the drivers' pay. They allow deductions for truck rental fees, the cost of insurance, workers'

compensation coverage, and customers' refused deliveries. As an example, one section of the Service Agreement provides:

> Contractor will be liable for loss or damage to items intended for transport occurring while such items are in Contractor's possession or under his dominion and control. Before making deductions from settlements with Contractor … to reflect such loss or damage, Company shall provide Contractor with a written explanation and itemization of such deductions.

In 2016 Johnson and Moore sued Diakon in federal court alleging violations of Illinois labor law. Plaintiffs allege that Diakon misclassified them as independent contractors when they were employees under Illinois law. Plaintiffs' allegation rests on the definition of "employee" in the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 to 115/15. Under 820 ILCS 115/2, Illinois courts apply a three-part test to determine employee status. *Novakovic v. Samutin*, 354 Ill. App. 3d 660, 667–68 (2004). The parties agree that this approach, known as the "ABC Test", is more likely to classify workers as employees than is the parallel test under Virginia law, which plaintiffs concede would treat them as contractors.

The Illinois Act allows deductions from pay only if the employees consent in writing at the time of the deduction. 820 ILCS 115/9. Plaintiffs allege that Diakon's deductions from their pay did not satisfy this contemporaneous-authorization requirement and so were improper. Plaintiffs seek reimbursement on behalf of a class of drivers in Illinois who signed similar Service Agreements with Diakon.

Federal subject-matter jurisdiction rests on the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), which creates jurisdiction when three requirements are met: the amount in

controversy exceeds $5 million, at least one class member and any defendant are citizens of different states, and there are at least 100 class members. See 28 U.S.C. §§ 1332(d)(2), (d)(2)(A), (d)(5)(B).

The district judge certified a class under Fed. R. Civ. P. 23(b)(3) comprising "[a]ll delivery drivers who (1) signed a Service Agreement with Diakon, (2) were classified as independent contractors, and (3) who performed deliveries for Diakon and Sears in Illinois between June 28, 2006 and the present." 2020 U.S. Dist. LEXIS 12435 (N.D. Ill. Jan. 23, 2020). This class satisfies the Act's requirements, but the story is more complicated. That's because plaintiffs amended their complaint to add Sears and Innovel as defendants.

The Class Action Fairness Act typically requires only minimal diversity, so the presence of defendants with Illinois citizenship did not affect subject-matter jurisdiction. See, e.g., *Morrison v. YTB International, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011). But these new defendants posed a potential problem: their inclusion might trigger the abstention doctrines embodied in 28 U.S.C. §1332(d)(4). This subsection provides that a "district court shall decline to exercise jurisdiction" when more than two-thirds of class members are from the state in which the lawsuit is filed and at least one defendant "from whom significant relief is sought" is a citizen of that state. Both Sears and Innovel are citizens of Illinois, and the class includes only truck drivers making deliveries in Illinois, which raises the question whether the single-state carveout in §1332(d)(4) applies. The parties' briefs did not address the possibility, but a court may raise abstention under the Class Action Fairness Act on its own, see *Mullen v. GLV, Inc.*, 37 F.4th

1326, 1328 (7th Cir. 2022). We invited the parties to submit supplemental memoranda to address the issue.

After reviewing the parties' submissions, we conclude that abstention is not warranted. Whether abstention under the Class Action Fairness Act should be evaluated based on the original complaint or instead on circumstances that may change as the case proceeds is an open issue in this circuit. *Mullen*, 37 F.4th at 1329. But, under either approach, the result in this case is the same. Sears and Innovel did not enter the case until plaintiffs' Second Amended Complaint, filed about a year after the suit commenced. Plaintiffs voluntarily dismissed their claims against Sears and Innovel in October 2021. Sears and Innovel were not parties when this case began and are not parties now, so abstention is not required.

That brings us to plaintiffs' claims under the Illinois Wage Payment and Collections Act (which from now on we call "the Act"). The district judge entered summary judgment in Diakon's favor, concluding that the choice-of-law clauses mandate application of Virginia law. 2021 U.S. Dist. LEXIS 188950 (N.D. Ill. Sept. 30, 2021). The district judge did not analyze the difference between the two versions of the Service Agreements and instead concluded that plaintiffs' claims fail because they are all inextricable from the Agreements' choice-of-law provisions. To support that conclusion, the district judge observed that Illinois courts routinely enforce choice-of-law clauses. See *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 351–52 (2002). Diakon embraces this argument on appeal, insisting that plaintiffs' claims necessarily depend on their Service Agreements.

Plaintiffs maintain that Diakon has waived the benefit of the choice-of-law provisions. See *Vukadinovich v. McCarthy*, 59

F.3d 58, 62 (7th Cir. 1995) (choice of law normally is not jurisdictional and is subject to waiver). Diakon first argued that the state-law claims were preempted and later defended against class certification. It was not until summary judgment that Diakon raised the choice-of-law clauses directly, and plaintiffs say that Diakon's prior arguments amount to an admission that Illinois law controls.

The district judge remarked that Diakon would have waived reliance on Virginia law had it first sought a ruling on the merits under Illinois law and changed course only after an adverse decision. But the district judge found that Diakon had consistently maintained that the Illinois law does not apply, either because federal law preempts it or because it is otherwise inapplicable. As for delay, the district judge concluded that Diakon contemplated choice-of-law defenses early on. Diakon at one point notified plaintiffs' counsel that it intended to amend its answer to include the choice-of-law argument, but ultimately did not amend after plaintiffs' counsel assured Diakon's lawyers that it did not consider the defense waived. Plaintiffs say that might have been true then, but the defense is waived now, with many briefs having come and gone in the district court without a direct choice-of-law argument. Here too the district judge was unpersuaded, noting that Diakon mentioned choice of law in its opposition to class certification and concluding that Diakon did not sit on the defense until after other arguments had failed. The district court's reasoning persuades us.

Now consider the language of the Service Agreements. Recall that the pre-2015 versions (which, by the way, are the only signed versions in the parties' appendices) provide that "[t]his Agreement shall be governed by and construed in

accordance with the laws of the Commonwealth of Virginia". Under the Act, however, whether a person qualifies as an "employee" has little to do with how any contract describes the work. Courts in Illinois routinely disregard contractual language classifying workers as contractors or consultants. See, e.g., *O'Malley v. Udo*, 2022 IL App (1st) 200007 ¶48 (Jan. 14, 2022) ("However, it is also well established that plaintiff's status under the [Act] is not controlled by how the parties referred to themselves in their agreement."); *Cohen Furniture Co. v. Department of Employment Security*, 307 Ill. App. 3d 978, 982 (1999) (interpreting equivalent provisions of the Unemployment Insurance Act, 820 ILCS 405/100 to 405/3200). Instead, state courts apply the definition of "employee" contained in the Act itself, 820 ILCS 115/2, which *O'Malley* deemed "much broader" than common-law tests for employee status. See 2022 IL App (1st) 200007 ¶48.

If the critical test for determining whether plaintiffs count as employees for purposes of the Act comes from the statute rather than a contract, then the Service Agreement is irrelevant, no matter what it says. This means that Illinois would not honor either the declaration of independent-contractor status or the choice-of-Virginia-law clause. Cf. *Byrne v. Hayes Beer Distributing Co.*, 2018 IL App (1st) 172612 ¶32 (Dec. 4, 2018) (a contention "that the [Act] prevents [an employer] from deducting money … does not require reference to or an interpretation of the [contract]" and "derive[s] solely out of section 9 of the [Act]"). Diakon does not contend that Illinois would violate the Constitution's Full Faith and Credit Clause by preferring its domestic law over another state's for work done within its borders.

Another way of saying this is that plaintiffs' claims to undiminished wages arise from their work in Illinois, not from their contracts. The Act governs payment for work in Illinois regardless of what state's law governs other aspects of the parties' relations. *Byrne* described claims under the Act as "exist[ing] independently of" any contract. *Ibid.* And a valid claim under the Act does not require the presence of a formal contract at all. See *Landers-Scelfo v. Corporate Office Systems, Inc.*, 356 Ill. App. 3d 1060, 1067 (2005) (claim under the Act need not include "a formally negotiated contract"); *Zabinsky v. Gelber Group, Inc.*, 347 Ill. App. 3d 243, 249 (2004) (Act "requires only a manifestation of mutual assent on the part of two or more persons; parties may enter into an 'agreement' without the formalities and accompanying legal protections of a contract").

Diakon contends that the post-2015 version of the Service Agreement should be treated differently. But given the analysis above, it is hard to see how any contractual language moves the needle. The test for employee status under the Act does not depend on (and often disregards) contractual designations. While the contracts create certain obligations, such as the drivers' duty to take care when making deliveries (and so to avoid deductions if possible), Diakon's duty to make only proper deductions from the drivers' wages flows from the Act, not the contracts. It follows that nothing about choosing Virginia law affects plaintiffs' claims under the Act.

A national firm such as Diakon wants a single state's law to govern its labor force because it is simpler to learn and follow one state's rather than fifty states' laws. And when workers cross state borders in the course of their duties, the benefits of choosing one state's law are even greater. Imagine a driver

who loads up in Romeoville with refrigerators bound for customers in both Indiana and Illinois. Somewhere along the way, it is impossible to say exactly where, a bump in the road damages some of the merchandise. After arriving in Indiana, the driver discovers the problem and a customer refuses delivery. The driver returns to Romeoville with the damaged refrigerator. Does Illinois' law or Indiana's determine what, if anything, Diakon may deduct from the driver's pay? Given the complexities of such a situation, we could imagine Illinois introducing special considerations for interstate work. But Diakon does not contend that Illinois has done so; Diakon does not make anything of the fact that drivers leave from the warehouses in Illinois with merchandise bound for multiple states. See *United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020) (discussing the principle of party presentation).

Earlier in the case Diakon did argue that the multistate nature of the drivers' work meant that Illinois law is preempted by the Federal Aviation Administration Authorization Act of 1994 and federal truck-leasing regulations. But the district judge ruled that the Illinois Wage Payment and Collection Act affects carriers' rates, routes, or services only indirectly and so is not preempted. 2018 U.S. Dist. LEXIS 52149 (N.D. Ill. Mar. 28, 2018). The judge added that the regulations set guidelines for allowing certain types of deductions but do not mean that such deductions are always permissible. Diakon has abandoned these contentions on appeal, and we do not address them one way or another.

The contractual clauses on which Diakon relies do not apply to claims brought under the Act based on work done in Illinois. The judgment of the district court is reversed, and the case is remanded for further proceedings.