[Cite as *Harris v. Vision Energy, L.L.C.*, 2024-Ohio-2878.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JEFF HARRIS, | : | APPEAL NOS. C-230406 |
| | | C-230425 |
| Plaintiff-Appellant/Cross-Appellee, | : | TRIAL NO.   A-1905743 |
| | : | |
| vs. | | |
| | : | *O P I N I O N.* |
| VISION ENERGY, LLC, | : | |
| TURNER HUNT, | : | |
| MARCI BURTON, | : | |
| and | : | |
| BRENT CREEK, | : | |
| Defendants-Appellees/Cross-Appellants. | : | |
| | : | |

Civil Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: July 31, 2024

*Blessing & Wallace LLC* and *William H. Blessing*, for Plaintiff-Appellant/Cross-Appellee,

*Dressman Benzinger LaVelle PSC* and *Kevin F. Hoskins,* for Defendants-Appellees/Cross-Appellants.

**BERGERON, Judge.**

{¶1} For several years, Vision Energy, LLC, ("Vision") an Ohio-based company, contracted with plaintiff-appellant Jeff Harris, an Ohio resident, to develop a wind farm project in Illinois. After the project initially failed and Vision and Mr. Harris parted ways, he got wind that Vision sold the farm to a European company in a lucrative transaction. But he never saw any income from that sale, despite his four percent ownership interest in the special project company created to operate the farm. Litigation ensued, and an arbitration panel eventually awarded him breach of contract damages. Before that arbitration, however, the trial court dismissed his claim under an Illinois wage law on the grounds that the parties' choice of Ohio law in the written agreement precluded application of Illinois law. Based on an intervening decision from the Seventh Circuit interpreting that statute, we reverse the trial court's dismissal in order to allow Mr. Harris to continue pursuing his claim under Illinois law (although we solely decide this on the pleadings and express no view on the ultimate merit of the claim). We otherwise affirm the judgments of the trial court splitting trial court costs between the parties and confirming the award of arbitration costs to Mr. Harris.

I.

{¶2} Vision, an Ohio company with an office in Cincinnati, entered an "Independent Contractor's Agreement" ("Contractor's Agreement") with Mr. Harris in 2007, hiring him for specific duties relating to a windmill farm energy project (the "K4 Wind Farm") across several counties in Illinois. Mr. Harris's duties mostly overlapped with Vision's duties (with the exception of land acquisition, which fell solely within his province) and included assisting with development schedules, government relations, permits and approvals, risk assessment, and other "local activities." They renewed the

2

Contractor's Agreement annually from 2007 through 2010 through a markup of the original.

{¶3}   Vision agreed to pay Mr. Harris $15,000 per month plus reasonable expenses and agreed to provide "a four percent (4%) ownership interest in the project company that will be created as a special purpose vehicle to hold all assets related to the K4 Wind Farm," per the Contractor's Agreement.  The resulting project company was Friends of K4, LLC, ("FK4") which was incorporated in Delaware and had a Cincinnati, Ohio, mailing address.   According to the original FK4 Operating Agreement (the "FK4 Agreement"), its members were Vision (designated as president, secretary, and treasurer), Mr. Harris, Marci Burton, and Brent Creek.  The latter three each owned voting and nonvoting units in the company, but Vision held no more than a nominal interest in the LLC.

{¶4}   In October 2010, Turner Hunt, Vision's sole owner, informed Mr. Harris that he was shutting down the K4 Wind Farm.  Mr. Harris saw an opportunity, and the two entered an agreement for him to purchase the wind farm for $8 million.  But after seeking funding for the purchase, he ultimately informed Mr. Hunt in February 2011, shortly before the planned closing of the sale, that he could not move forward with the purchase.  Mr. Hunt pocketed the $150,000 that Mr. Harris had paid him as a deposit for the sale, and further communication broke down.

{¶5}   After the collapse of that deal, Mr. Harris claimed that Mr. Hunt, Ms. Burton, and Mr. Creek conspired throughout 2011 and 2012 to dispossess him of his ownership interest in FK4 and any future proceeds from it.  At some point, he received an email offer from Ms. Burton and Mr. Creek to purchase his FK4 membership for $30,000 but did not accept it.  He alleged that Mr. Hunt then "concocted, fabricated,

and forged a bogus operating agreement for [FK4]," which he believed altered their original FK4 Agreement to remove his voting membership and to orchestrate several other changes unfavorable to him. He was allegedly removed and divested from FK4 and replaced with Vision as a unit owner, all without any notification or communication from Vision or Mr. Hunt.

{¶6} Later, in 2017, Mr. Harris claimed that an employee for Vision informed him that Mr. Hunt had sold the K4 Wind Farm to a large French-owned utility company, EDF, and that income had been distributed to members. Around this time, Mr. Harris allegedly received the "forged" version of the FK4 Agreement, which removed him as an owner. He then presented an arbitration demand to FK4's attorney pursuant to an arbitration provision of the original FK4 Agreement.

{¶7} That effort went nowhere, and Mr. Harris eventually filed suit against defendants-appellees/cross-appellants Vision, Mr. Hunt, Ms. Burton, and Mr. Creek (together, "Defendants") in December 2019, later amending his complaint in February 2021. Against Defendants, Mr. Harris claimed conspiracy and concerted action with damages, conversion, breach of employment contract regarding the Contractor's Agreement (against only Vision and Mr. Hunt), breach of employment contract regarding the FK4 Agreement, and breach of fiduciary duty. He sought compensatory damages, punitive damages, interest, attorney fees, and declaratory relief.

{¶8} Under both of his breach of contract claims, he sought a right to relief under the Illinois Wage Payment & Collection Act ("IWPCA"), 820 ILCS 115/1, which declares that "[t]his Act applies to all employers and employees in this State," with exceptions for state and federal employees. Mr. Harris insisted that he was an employee of Vision and was thus entitled to underpaid wages under Section 115/14 of

4

the IWPCA because he realized no income from the sale of FK4 to EDF. Defendants moved to dismiss the IWPCA claim[1] in March 2021 on the basis that only Ohio employment law applied, pursuant to a choice of Ohio law clause in the Contractor's Agreement that read: "The validity, interpretation, and performance of this Agreement shall be governed by and construed in accordance with the laws of Ohio applicable to agreements made and performed entirely within Ohio." Defendants maintained that the IWPCA did not apply to Mr. Harris because of the choice of Ohio law provision, but even if it did govern, the claim failed because he was a contractor and not an employee and because equity distributions from the sale of FK4 were not recoverable under the act. The trial court granted Defendants' partial motion to dismiss the IWPCA claim in July 2021, applying Ohio's conflict of laws rules and determining that the choice of Ohio law clause controlled, precluding application of Illinois wage laws to Mr. Harris's work for Vision.

{¶9} In October 2021, the trial court referred the remaining claims to arbitration. The parties entered into a signed "Arbitration Agreement" in November 2021, which included an agreement that the costs of the arbitration would be split between the parties 50/50. The three-arbitrator panel ultimately awarded Mr. Harris $413,216 in monetary damages and prejudgment interest for his common law breach of contract claims but rejected all of his other claims. It also awarded him $55,779.26 in arbitration costs, taxed entirely against Vision and Mr. Hunt. The trial court confirmed the panel's decision without any changes, overruled several attacks on the award by Defendants, and imposed half of the trial court costs on Mr. Harris and half on Defendants. In confirming the arbitration costs award, it relied on an unsigned

---

[1] Although Mr. Harris raised the IWPCA under multiple breach of contract claims in his amended complaint, the parties refer to it as a single "IWPCA claim," and we follow suit.

5

"Preliminary Conference Order," generated at the start of the arbitration proceedings, which purported to govern the arbitration. Mr. Harris appealed the dismissal of his IWPCA claim and the decision to impose half of the trial court costs on him, and Defendants cross-appealed the confirmation of the arbitration costs award.

II.

{¶10} We begin with the dismissal of Mr. Harris's IWPCA claim, which involves the complex relationship between Ohio's and Illinois's wage laws, conflict of laws concepts, and the choice of law provision of the Contractor's Agreement. Mr. Harris claims Defendants violated Section 115/14 of the IWPCA by failing to pay him "final compensation" in the form of equity distributions owed to him for the sale of FK4, which occurred in or around 2014. At that time, the IWPCA afforded the following protection:

> Any employee not timely paid wages, final compensation, or wage supplements by his or her employer as required by this Act shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees.

820 ILCS 115/14 (effective 2014). The statute remains largely unchanged today, except the two percent damages is now five percent. 820 ILCS 115/14 (effective 2023).

{¶11} In reviewing a trial court's dismissal of a claim under Civ.R. 12(B)(6), this court assesses the sufficiency of the complaint, taking its allegations as true and

drawing reasonable inferences in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). Ohio courts grant a motion to dismiss "only when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Greenwood v. Taft*, 105 Ohio App.3d 295, 297, 663 N.E.2d 1030 (1st Dist.1995), citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975). This court reviews the trial court's decision to grant a motion to dismiss under Civ.R. 12(B)(6) de novo. *Inwood Village, Ltd. v. City of Cincinnati*, 1st Dist. Hamilton No. C-110117, 2011-Ohio-6632, ¶ 8, citing *Perrysburg Twp. v. City of Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5.

A.

{¶12} To begin our conflict of laws analysis, we first acknowledge Mr. Harris's argument that, under a recent decision of the federal circuit court that includes Illinois, claims under the IWPCA arise from a claimant's work in Illinois, independent of any choice of foreign state law provision agreed to by the parties. *See Johnson v. Diakon Logistics, Inc.*, 44 F.4th 1048, 1052-1053 (7th Cir.2022).[2] In that case, two truck drivers who moved goods from an Illinois warehouse to in-state and out-of-state destinations sued Diakon, which had its principal place of business in Virginia, under the IWPCA. Despite a choice of Virginia law provision in the parties' contracts, the court held that "plaintiffs' claims to undiminished wages arise from their work in Illinois, not from their contracts." *Id.* at 1052. It thus reversed an order granting Diakon summary judgment and allowed the IWPCA claims to proceed. *Id.* at 1053.

---

[2] On appeal, Defendants curiously decline to substantively engage with *Diakon*. When one side relies heavily on a new case that appears (on its face, at least) substantively to control the outcome, it generally behooves the other side to at least offer their perspective on the case, which certainly benefits our consideration of the matter.

{¶13} The *Diakon* holding, which we find persuasive in our analysis, obviated the need for a conflict of laws analysis to determine whether the choice of foreign state law controls over Illinois law. But as an Ohio court, we are compelled to follow Ohio precedent for how to apply conflict of laws rules when the parties dispute application of a choice of law provision, and our courts tend to apply a conflict of laws analysis in similar situations. *See Am. Interstate Ins. Co. v. G & H Serv. Ctr.*, 112 Ohio St.3d 521, 2007-Ohio-608, 861 N.E.2d 524, ¶ 10 (applying Ohio's conflict of laws rules to determine that Ohio's worker compensation laws governed); *Ohayon v. Safeco Ins. Co.*, 91 Ohio St.3d 474, 476-477, 747 N.E.2d 206 (2001) (applying Ohio's conflict of laws rules in an insurance contract dispute).

{¶14} As an Ohio trial court, the court below correctly applied the conflict of laws rules (sometimes called the choice of law rules) of its own state. *See Estate of Sample v. Xenos Christian Fellowship, Inc.*, 2019-Ohio-5439, 139 N.E.3d 978, ¶ 17 (10th Dist.), citing *Pevets v. Crain Communications, Inc.*, 6th Dist. Ottawa No. OT-10-023, 2011-Ohio-2700, ¶ 32. Ohio has adopted the Restatement of the Law 2d, Conflict of Laws (1971) "in its entirety." *Am. Interstate Ins. Co.* at ¶ 7, citing *Morgan v. Biro Mfg. Co., Inc.*, 15 Ohio St.3d 339, 341-342, 474 N.E.2d 286 (1984); *see Schulke Radio Prods., Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 438-439, 453 N.E.2d 683 (1983) (specifically adopting Section 187 of the Restatement). When the parties have chosen the law of a certain state to govern their contractual rights and duties, the court will apply that state's law unless either:

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties['] choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement, Section 187.

{¶15} The trial court concluded that Ohio had a substantial relationship to the parties, *see* Restatement, Section 187(a), because Vision is an Ohio limited liability company and paid for rental property in Ohio for Mr. Harris. We agree, and thus we focus our attention on Section 187(b). Regarding that part of the test, the court held that both Illinois and Ohio "have a policy interest in wage protection and employment law issues," and that the major difference between the two states' wage laws is whether attorney fees can be awarded. *See* 820 ILCS 115/14 (providing for reasonable attorney fees). It held that this difference was "not contrary to the policies of the states" and that "Ohio wage laws are not repugnant to the policies or laws of Illinois." Therefore, it concluded, the choice of Ohio law provision prevailed and precluded Mr. Harris's claim under the IWPCA.

{¶16} Applying Section 187, we first note that the parties do not substantially brief whether Ohio or Illinois would be the state of applicable law under Section 188, which governs absent a choice of law agreement. Given that Illinois was the place of performance and the subject matter of the contract, we view it as the state with the "most significant relationship to the transaction and the parties" and thus as the state of applicable law under Section 188. Restatement, Section 188(1) and (2). Since this differs from the parties' choice of Ohio law agreement, we confront a genuine dispute

9

over whether Illinois or Ohio law is best suited to govern. *Accord Cotter v. Lyft, Inc.*, 60 F.Supp.3d 1059, 1061 (N.D.Cal.2014) ("A court conducts a conflict of laws analysis only where the laws of multiple states could conceivably apply to the same claim. Where only one state's law applies, no such analysis is necessary.").

{¶17} Next, continuing through the Section 187(b) test, we are mindful that "[t]he forum will apply its own legal principles in determining whether a given policy is a fundamental one within the meaning of the present rule and whether the other state has a materially greater interest than the state of the chosen law in the determination of the particular issue." Restatement of the Law 2d, Conflict of Laws, Section 187, Comment g. Although Ohio case law lacks much guidance on how to apply these considerations, at least one court has relied on the case law of the other state in question, and we find its reasoning persuasive. *See Century Business Servs. v. Barton*, 197 Ohio App.3d 352, 2011-Ohio-5917, 967 N.E.2d 782, ¶ 65-69 (8th Dist.) (holding that application of Ohio law was not contrary to a fundamental policy of Minnesota after comparing Minnesota and Ohio case law on the relevant contract laws of the respective states).

{¶18} Under Section 187(b), we must determine whether, based on Illinois law, the IWPCA represents a "fundamental" policy of that state. "To be 'fundamental,' a policy must in any event be a substantial one," which "may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power." Restatement, Section 187, Comment g. According to Illinois courts, "[t]he primary objective of the [IWPCA] is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits."

10

*Mueller Co. v. Dept. of Labor*, 187 Ill.App.3d 519, 524, 543 N.E.2d 518 (1989); *see also People ex rel. Martin v. Lipkowitz*, 225 Ill.App.3d 980, 985, 589 N.E.2d 182 (1992) ("[T]he public has a clear and definite interest in enforcing the IWPCA."). Furthermore, the Seventh Circuit's holding in *Diakon*—that an Illinois worker's rights under the IWPCA cannot be waived by a choice of foreign state law provision purporting to preempt Illinois law—reinforces the fundamental importance of the law to the state. *Diakon*, 44 F.4th at 1052 ("The [IWPCA] governs payment for work in Illinois regardless of what state's law governs other aspects of the parties' relations."). Based on this case law, the IWPCA codifies Illinois's substantial interest in protecting its workers against the power of their employers to deny them contractual benefits. Accordingly, we conclude that the IWPCA represents a substantial and fundamental policy of Illinois.

{¶19} Next, we consider whether application of Ohio law would be contrary to that fundamental policy. On this point, we confront a weak premise at the heart of the trial court's dismissal order: the possibility that Ohio wage laws apply to and protect Mr. Harris's work performed in Illinois. Although Ohio certainly has a general interest in protecting the wages of Ohio workers, "[g]enerally, statutes are presumed not to have an extraterritorial effect unless the legislature clearly manifests a contrary intent." *Mitchell v. Abercrombie*, S.D.Ohio No. C2-04-306, 2005 U.S. Dist. LEXIS 48410, *6 (May 17, 2005), citing *Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 188, 113 S.Ct. 2549, 125 L.Ed.2d 128 (1993). Ohio's Prompt Pay Act, R.C. 4113.15, identified by Mr. Harris as the closest Ohio equivalent to the IWPCA, governs the duties of "[e]very employer doing business in this state," R.C. 4113.15(A), and "applies to employment (and employees) in Ohio" because "[s]tate wage and hours statutes

11

govern employees in the state in which they are employed." (Alteration in original.) *Osborn v. Knights of Columbus*, N.D.Ohio No. 3:04CV7486, 2005 U.S. Dist. LEXIS 2955, *7 (Mar. 1, 2005) (holding that Ohio's wage laws, not Connecticut's, governed because plaintiff's work was performed in Ohio, "notwithstanding the parties' contractual agreement that Connecticut law applies to their contract"). In support of its argument that R.C. 4113.15 extends to Illinois to protect Mr. Harris's work there, Defendants cite no Ohio precedent or public policy manifesting the General Assembly's intent for the extraterritorial application of that law.

{¶20} Nonetheless, at this stage, it is unnecessary to determine whether Ohio's wage laws could conceivably apply to work outside of the state. For the purposes of this appeal and of the conflict of laws analysis, we merely conclude that Defendants have not demonstrated that Ohio's wage laws can protect Mr. Harris's Illinois-based work. Given that conclusion, enforcing the parties' choice of Ohio law provision here would lead to an untenable result where, despite Illinois's fundamental policy of protecting wages through the IWPCA, Mr. Harris would have worked in that state for years without the protection of *any* state's wage laws. He would then be left in a legal void of wage protection, and such a result is contrary to Illinois's fundamental policy as expressed through the IWPCA.

{¶21} The void-of-protection result also showcases that Illinois has a materially greater interest than Ohio in the issue of whether Mr. Harris's work in Illinois was protected by any wage protection laws. The Seventh Circuit's holding in *Diakon* that an Illinois employee's rights under the IWPCA cannot be contracted away through a choice of law provision also reinforces the strong interest of the state in ensuring its workers are not deprived of statutory rights by the attempted substitution

12

of foreign state law, which may ultimately prove inapplicable. *See Diakon*, 44 F.4th at 1052-1053 ("[N]othing about choosing Virginia law affects plaintiffs' claims under the Act."). Simply put, refusing to apply Illinois law to Mr. Harris's work in Illinois would raise comity concerns and threaten the effectiveness of fundamental Illinois law in protecting workers in that state.

{¶22} Therefore, under Section 187 of the Restatement, the parties' contractual choice of Ohio law provision cannot control because applying it would be contrary to a fundamental policy of Illinois, which has a greater material interest than Ohio in determining whether Mr. Harris's work in Illinois was protected by wage laws. Of course, Mr. Harris still must demonstrate that he is entitled to relief under the IWPCA, but we leave those questions (including whether he is an "employee" who was deprived of "final compensation" under the IWPCA) for further proceedings before the trial court on remand.

B.

{¶23} Finally, we resolve several ancillary issues relating to the first assignment of error. First, Defendants maintain that Mr. Harris's appeal of the IWPCA claim dismissal is moot because Mr. Harris "accepted the payment" from Defendants for satisfaction of the final judgment against them as confirmed by the trial court in its July 2023 entry. As he indicated in his October 2023 "Acknowledgment of Payments Toward Satisfaction of July 21, 2023 Judgment Entry," Mr. Harris argues that the acknowledgment does not foreclose his appeal regarding issues not resolved by that judgment entry, including his IWPCA claim and his claims regarding trial court costs and prejudgment interest on the arbitration costs.

{¶24} Defendants rely on the principle that:

13

[A] satisfaction of judgment renders an appeal from that judgment moot. " 'Where the court rendering judgment has jurisdiction of the subject-matter of the action and of the parties, and fraud has not intervened, and the judgment is voluntarily paid and satisfied, such payment puts an end to the controversy, and takes away from the defendant the right to appeal or prosecute error or even to move for vacation of judgment.' "

*Blodgett v. Blodgett*, 49 Ohio St.3d 243, 245, 551 N.E.2d 1249 (1990), quoting *Rauch v. Noble*, 169 Ohio St. 314, 316, 159 N.E.2d 451 (1959), quoting *Lynch v. Lakewood City School Dist. Bd. of Edn.*, 116 Ohio St. 361, 156 N.E. 188 (1927), paragraph three of the syllabus.

{¶25} But Defendants' argument misses the mark, because Mr. Harris is appealing the trial court's July 2021 dismissal of his IWPCA claim on the grounds that Illinois law does not apply, which is a separate entry from the one confirming the arbitration award. That is why, in fact, we have two separate appellate cases to resolve in this matter. Further, in a case similar to this one, the Twelfth District held that a satisfaction of judgment that applied only to plaintiffs' parental liability statute claims did not preclude plaintiffs' appeal of "the trial court's dismissal of [plaintiffs'] negligent supervision and NIED claims" that were disposed of before trial. *Ross v. Wendel*, 2017-Ohio-7804, 97 N.E.3d 722, ¶ 20 (12th Dist.). In line with *Ross*, we hold that Mr. Harris did not waive his right to appeal the separate dismissal of his IWPCA claim by acknowledging payment of the arbitration award relating to his other claims.

{¶26} Second, Defendants justify the dismissal on the alternative ground that Mr. Harris failed to sufficiently plead his IWPCA claim. To establish a violation of the

14

IWPCA, a plaintiff must allege that "(1) the defendant was an 'employer' as defined in the Wage Payment Act; (2) the parties entered into an 'employment contract or agreement'; and (3) the plaintiff was due 'final compensation.' " *Catania v. Local 4250/5050 of the Communications Workers of Am.*, 359 Ill.App.3d 718, 724, 834 N.E.2d 966 (2005), quoting 820 ILCS 115. In his amended complaint, Mr. Harris claimed Defendants violated 820 ILCS 115/14 by withholding compensation in the form of payments owed pursuant to his ownership interest, which he says qualifies as "final compensation" under 820 ILCS 115/2 under the category of "any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties." 820 ILCS 115/2. He alleged that he worked in Illinois as an employee of Vision under Mr. Hunt's direction and control at all times until late 2010.

{¶27} By pleading that the income from the sale was final compensation owed to him pursuant to a valid employment agreement with Vision, construing the IWPCA's broad definition of final compensation in his favor, Mr. Harris pleaded sufficient facts to advance an IWPCA claim, and it is not beyond doubt that he cannot recover under the act. Even so, we recognize a recent Illinois appellate court decision involving Vision that might affect the viability of Mr. Harris's claim at the summary judgment stage on remand. *See Vision Energy, LLC v. Smith*, 2024 Ill.App.3d 230289-U, 2024 Ill. App. Unpub. LEXIS 1275, ¶ 69 (holding that a former employee's IWPCA claim against Vision for unpaid royalties did not qualify as "final compensation" due at the time of her separation from employment and affirming a grant of summary judgment to Vision). We leave to the trial court on remand the question of how that decision (which is notably nonprecedential and only persuasive

15

authority) relates to Mr. Harris's claim for unpaid equity distributions, which simply cannot be determined on the face of the pleadings. Drawing reasonable inferences in his favor at this stage, Mr. Harris sufficiently pleaded his claims.

{¶28} Third, Defendants argue that their payment of the final judgment award to Mr. Harris satisfied his claim for lost wages under the IWPCA. Although it is certainly possible the arbitration award overlaps with Mr. Harris's IWPCA damages claim in a way that would preclude further recovery, we do not have a developed record, at the pleadings stage, to decide that question. Any potential collateral estoppel issues regarding the IWPCA claim are likewise best suited for trial court resolution. Defendants and Mr. Harris will have the opportunity to develop these arguments on remand.

{¶29} Fourth, Mr. Harris argues that application of Ohio wage laws in place of Illinois wage laws would violate the Dormant Commerce Clause doctrine. Because we determine that his Illinois law claim can continue on remand, we need not address the constitutional question he raises. *See Ohioans for Fair Representation v. Taft*, 67 Ohio St.3d 180, 183, 616 N.E.2d 905 (1993), quoting *Hall China Co. v. Pub. Util. Comm.*, 50 Ohio St.2d 206, 210, 364 N.E.2d 852 (1977) (" 'Ohio law abounds with precedent to the effect that constitutional issues should not be decided unless absolutely necessary.' ").

{¶30} Ultimately, we sustain Mr. Harris's first assignment of error and conclude that the trial court erred in dismissing his IWPCA claim because, under Ohio's conflict of laws rules, Illinois law applies to his claim and prevails over the choice of Ohio law provision in the Contractor's Agreement.

16

III.

**{¶31}** In his second assignment of error, Mr. Harris argues that the trial court erred in taxing half of the trial court costs to him rather than taxing all of the costs to Defendants. Under Civ.R. 54(D), "[e]xcept when express provision therefor is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs." This rule "grants the court discretion to order that the prevailing party bear all or part of his or her own costs," but the rule does not "empower[] the court to award costs to a non-prevailing party." *Vance v. Roedersheimer*, 64 Ohio St.3d 552, 555, 597 N.E.2d 153 (1992). We review allocations of costs under the rule for an abuse of discretion. *State ex rel. Frailey v. Wolfe*, 92 Ohio St.3d 320, 321, 750 N.E.2d 164 (2001), citing *State ex rel. Reyna v. Natalucci-Persichetti*, 83 Ohio St.3d 194, 198, 699 N.E.2d 76 (1998). An abuse of discretion occurs when "a court exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

**{¶32}** A party's "prevailing party" status does not automatically entitle it to avoid any and all trial court costs. *See Vance* at 555; *Wolfe* at 321. And "[d]eny[ing] costs to both parties can be appropriate when neither party entirely prevails." *Natalucci-Persichetti* at 198; *see also Paulozzi v. Iannotti*, 8th Dist. Cuyahoga No. 103381, 2016-Ohio-5511, ¶ 46 (affirming a trial court's decision to order the parties to pay their own court costs where the plaintiff won on one claim, but defendant won on the other because "neither party, or both parties depending on perspective, prevailed on its claims."). Accordingly, where a party prevails on some, but not all its claims, this court has held that it is not an abuse of discretion to tax a portion of the trial court

costs against that party. *Capeheart v. O'Brien*, 1st Dist. Hamilton No. C-040223, 2005-Ohio-3033, ¶ 18. In other words, where the verdict is split, there can be multiple "prevailing parties" for the purposes of Civ.R. 54(D), and the rule permits a court to tax costs against those parties in such a situation. *See Foster v. Idegy, Inc.*, 10th Dist. Franklin No. 13AP-948, 2014-Ohio-3015, ¶ 9, citing *J&H Reinforcing v. Ohio School Facilities Comm.*, 10th Dist. Franklin No. 13AP-732, 2014-Ohio-1963, ¶ 18 ("[A] trial court does not commit an abuse of discretion in allocating court costs evenly between two prevailing parties.").

{**¶33**} Here, both parties prevailed on at least one claim. Despite Mr. Harris's substantial recovery on his general breach of contract claims, he recovered less than half of what he requested, and the arbitrators and the trial court determined that Defendants prevailed on all of Mr. Harris's other tort claims and his requests for punitive damages, attorney fees, and "double damages." Therefore, we conclude both Mr. Harris and Defendants qualify as "prevailing parties" under the rule, and taxing costs equally against them both was thus permissible under Civ.R. 54(D) and does not constitute an abuse of discretion. We overrule Mr. Harris's second assignment of error.

IV.

{**¶34**} Turning to the arbitration award, the parties each raise an argument on appeal relating to the award of arbitration costs to Mr. Harris. We consider Mr. Harris's argument on prejudgment interest before addressing Defendants' argument about the costs award itself.

A.

**{¶35}** Mr. Harris argues the court erred by not awarding prejudgment interest on the $55,779.26 in arbitration costs awarded to him pursuant to R.C. 1343.03 for the time from the arbitration panel's award (February 9, 2023) to the date the trial court confirmed the award (July 31, 2023). But Mr. Harris identifies nowhere in the record where he ever requested prejudgment interest under that statute, nor can we find such a request. Because he never prompted the trial court (nor the arbitrators, it seems) to consider such a request, Mr. Harris has no grounds to appeal the fact it did not award it. *See Feist v. Plesz*, 9th Dist. Summit No. 21312, 2003-Ohio-2843, ¶ 21 ("[N]othing in the record before this Court indicates that [plaintiff] ever requested prejudgment interest from the arbitration panel * * *. Consequently, the trial court did not abuse its discretion in denying [plaintiff's] motion for prejudgment interest under R.C. 1343.03(A).").

**{¶36}** Mr. Harris posits that he was nonetheless entitled to prejudgment interest as a matter of law. Although it is true that "[o]nce a plaintiff receives judgment on a contract claim, the trial court has no discretion but to award prejudgment interest under R.C. 1343.03(A)," the statute does not mandate that the trial court sua sponte award the interest without any party ever requesting it. *Zunshine v. Cott*, 10th Dist. Franklin No. 06AP-868, 2007-Ohio-1475, ¶ 25, citing *First Bank v. L.C., Ltd.*, 10th Dist. Franklin No. 99AP-304, 1999 Ohio App. LEXIS 6504 (Dec. 28, 1999). Because he failed to request prejudgment interest below, we decline to award it now, and we overrule his third assignment of error.

B.

**{¶37}** In the sole assignment of error raised in their cross-appeal, Defendants argue the trial court erred in confirming the arbitration panel's decision to award Mr. Harris the full amount of the arbitration costs, taxing it entirely against Defendants. Defendants argue that the parties' November 2021 Arbitration Agreement, which definitively states "The cost of the arbitrators/Appraiser shall be paid 50/50 by Harris and Defendants," should have controlled the proceedings. The trial court below rejected that argument, holding that the Preliminary Conference Order, which allowed for arbitrator discretion over costs, prevailed and that the panel's costs award did not fall outside of that discretion.

**{¶38}** "When reviewing a trial court's decision to confirm, modify, vacate, or correct an arbitration award, an appellate court should accept findings of fact that are not clearly erroneous but should review questions of law de novo." *Portage Cty. Bd. of Dev. Disabilities v. Portage Cty. Educators' Assn. for Dev. Disabilities*, 153 Ohio St.3d 219, 2018-Ohio-1590, 103 N.E.3d 804, ¶ 2. "R.C. Chapter 2711 provides the exclusive statutory remedy for appealing arbitration awards to the courts of common pleas." *DiPietrantonio v. City of Norwood*, 1st Dist. Hamilton No. C-080533, 2009-Ohio-2260, ¶ 14, citing *City of Galion v. Am. Fedn. of State, Cty. & Mun. Emp., Ohio Council 8, AFL-CIO, Local No. 2243*, 71 Ohio St.3d 620, 646 N.E.2d 813 (1995), paragraph two of the syllabus.

**{¶39}** Importantly, R.C. Chapter 2711 distinguishes between vacatur and modification of arbitration awards. R.C. 2711.10 allows a trial court to vacate an arbitration award if "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter

submitted was not made." R.C. 2711.10(D). Arbitrators do not exceed their powers so long as the award "draws its essence" from the parties' arbitration agreement. *See Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emps. Assn., Local 11*, 59 Ohio St.3d 177, 184, 572 N.E.2d 71 (1991); *Bd. of Trustees of Anderson Twp. v. Anderson Twp. Professional Firefighters Assn., IAFF Local 3111*, 1st Dist. Hamilton No. C-180371, 2019-Ohio-2302, ¶ 10-11.

{¶40} By contrast, under R.C. 2711.11, a trial court "shall" modify or correct an arbitration award if:

(A) There was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award;

(B) The arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted; [or]

(C) The award is imperfect in matter of form not affecting the merits of the controversy.

{¶41} After the panel awarded Mr. Harris the full costs of arbitration, Defendants filed a "Motion to Modify Arbitration Award," arguing that the panel's costs award did not "draw its essence" from the parties' November 2021 Arbitration Agreement and that it thus should be modified under R.C. 2711.11(C) to reflect the parties' agreement to split the costs 50/50. On reply below, they pivoted to a request to modify under R.C. 2711.11 *or* to partially vacate under R.C. 2711.10. The trial court denied their motion, correctly observing that Ohio courts apply the "draw its essence" test only in the context of vacating arbitration awards under R.C. 2711.10, not with

respect to modifying them under R.C. 2711.11. It nonetheless considered both the request to modify and the request to vacate, denying them because the award conformed to the Preliminary Conference Order, which it determined controlled the proceedings instead of the Arbitration Agreement.

{¶42} On appeal, Defendants pursue the same approach. Perhaps in a somewhat veiled effort to have us extend the "draw its essence" test to motions to modify under R.C. 2711.11, they misconstrue prior holdings of Ohio courts that have confined their analysis to vacatur under R.C. 2711.10 by suggesting those courts permitted modification under the same analysis. *See Cedar Fair, L.P. v. Falfas*, 140 Ohio St.3d 447, 2014-Ohio-3943, 19 N.E.3d 893, ¶ 7-8 (confining its analysis to vacatur under R.C. 2711.10 and not citing to R.C. 2711.11 or discussing modification); *Ohio Office of Collective Bargaining*, 59 Ohio St.3d at 179, 572 N.E.2d 71 (same). But the statutes operate in fundamentally different ways: "[u]nlike R.C. 2711.10, R.C. 2711.11 does not allow a reviewing court to modify an arbitration award for the reason that the award violates the law." *Lake Cty. Bd. of Mental Retardation & Dev. Disabilities v. Professional Assn. for the Teaching of the Mentally Retarded*, 71 Ohio St.3d 15, 20, 641 N.E.2d 180 (1994) (Wright, J., concurring). Indeed, R.C. 2711.11's grounds for modification are mechanical and clerical, including circumstances where the arbitrator miscalculated figures, incorrectly described a certain property or person, or otherwise erred "in matter of form," rather than on the merits. R.C. 2711.11(A)-(C).

{¶43} Regardless of how the trial court framed and addressed the issues below, we conclude that, for the purposes of their cross-appeal, Defendants only preserved the argument that the trial court erred in denying their motion to modify

the award of arbitration costs under R.C. 2711.11.  On that issue, the trial court did not err, because Defendants fail to show how the arbitrators miscalculated the cost award or otherwise blundered in form, rather than in substance.

{¶44}  Clearly, Defendants' true concern is that the arbitrators relied on the Preliminary Conference Order rather than the Arbitration Agreement.  But that argument speaks to the arbitrators' substantive legal authority—namely, whether the arbitrators "exceeded their powers," R.C. 2711.10, which might constitute grounds for *vacatur*, not for *modification* under R.C. 2711.11.  Given Defendants' failure to properly raise the issue in terms of vacatur below and again on appeal, we decline to address whether the trial court erred in confirming the costs award on the premise that the arbitrators properly followed the conference order rather than the Arbitration Agreement.  We therefore overrule Defendants' sole assignment of error in their cross-appeal.

\* \* \*

{¶45}  In sum, we hold that the trial court erred in dismissing Mr. Harris's IWPCA claim because under Ohio's conflict of laws rules, the parties' choice of Ohio law agreement cannot displace Illinois's wage laws.  We thus sustain his first assignment of error, reverse the judgment of the trial court dismissing his IWPCA claim, and remand the cause for further proceedings.  We also hold that the trial court did not err in splitting trial court costs 50/50 and overrule Mr. Harris's assignment of error on that issue.  Finally, regarding the award of arbitration costs, we overrule Mr. Harris's third assignment of error regarding prejudgment interest, and we overrule Defendants' sole assignment of error regarding the award of arbitration costs to Mr.

Harris taxed entirely against Defendants. We thus affirm the trial court's judgment confirming the arbitration award.

Judgments affirmed in part, reversed in part, and cause remanded.

**BOCK, P.J.,** and **ZAYAS, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.